IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARRY DEWAYNE WOODS,

    Petitioner,                    No. 2:11-CV-3250 LKK DAD

    vs.

A. HEDGEPETH,

    Respondent.              <u>ORDER AND</u>

                                       <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. On February 23, 2012, respondent was ordered to file and serve a response to the petition. On July 11, 2012, respondent filed a motion to dismiss which is currently pending before the court and submitted for decision.

        Respondent moves to dismiss the petition as second or successive under 28 U.S.C. § 2244(b), and, alternatively, as untimely filed beyond the one-year statute of limitations contained in 28 U.S.C. § 2244(d). Petitioner opposes the motion and has requested an evidentiary hearing. Respondent has filed a reply. After careful consideration of the record and the applicable law, the undersigned will recommend that respondent's motion to dismiss be granted.

BACKGROUND

Petitioner was convicted in the Sacramento County Superior Court of first degree murder, attempted murder and two counts of assault with a firearm with enhancement allegations found to be true. (Resp't's Lodged Doc. ("LD") 1.) On December 13, 1990, petitioner was sentenced to an indeterminate state prison term of forty-two years to life for the offenses of conviction and accompanying sentence enhancements. (Id.) On August 24, 1992, the California Court of Appeal for the Third Appellate District, reversed the trial court's imposition of a one-year prior prison term sentencing enhancement but affirmed the judgment of conviction in all other respects. (LD 2 at 75.) A petition for review filed on petitioner's behalf with the California Supreme Court was denied on November 25, 1992. (LD 3-4.)

In accordance with the state appellate court's decision, an amended abstract of judgment was filed on February 25, 1993, nunc pro tunc to December 13, 1990. (LD 5.) The amended abstract indicated the removal of the prior prison term enhancement and, accordingly, reflected that an indeterminate state prison term of forty-one years to life was imposed. (Id.) Subsequently, petitioner filed sixteen state post-conviction collateral challenges to his judgment of conviction at issue and each was denied. (LD 6-33.)

Petitioner has also filed two previous federal habeas actions in this court challenging the same judgment of conviction at issue here. His first federal petition for writ of habeas corpus was filed on September 24, 2001 and dismissed with prejudice as untimely on September 9, 2003. See Woods v. McGrath, CIV-S-02-1999 DFL DAD P (hereinafter "McGrath"); see also LD 34-36. The United States Court of Appeals for the Ninth Circuit declined to issue a certificate of appealability with regard to that judgment and the United States Supreme Court denied a petition for writ of certiorari filed on petitioner's behalf. (LD 37-38.) Petitioner's second federal habeas petition was filed on December 30, 2010 and dismissed on May 23, 2011, without prejudice to the filing of a second or successive petition with the required

/////

authorization from the Ninth Circuit.  See Woods v. Hedgpeth, 2:10-cv-3489 LKK DAD (HC); see also LD 39-41.

Petitioner subsequently sought authorization to file a second or successive petition from the Ninth Circuit Court of Appeals and that request was granted on November 14, 2011. (LD 42-43.)  He filed his petition for federal habeas relief in the pending action on December 2, 2011.  (Doc. No. 1.)  Therein, he challenges his 1990 judgment of conviction on two grounds: (1) that he was denied the effective assistance of trial counsel in violation of his rights under the Sixth Amendment; and (2) that he is actually innocent of the crimes of conviction.  (Id. at 5, 16.)

## MOTION TO DISMISS

### I. Respondent's Motion

Respondent contends the pending petition should be dismissed as successive under 28 U.S.C. § 2244(b), notwithstanding the Ninth Circuit's authorization, because petitioner's first federal habeas corpus petition filed in this court was dismissed with prejudice due to untimeliness, which is an adjudication that bars as second or successive any future federal habeas corpus petition challenging the same judgment. (Doc. No. 19 at 12-20.)  In the alternative, respondent contends that the petition should be dismissed as untimely because it was filed outside the applicable one-year statute of limitations set forth in 28 U.S.C. §2244(d).  (Doc. No. 19 at 20-26.)

### II. Petitioner's Opposition

Petitioner argues in opposition to the motion to dismiss that the pending habeas corpus petition is not successive because it presents a new claim that was not included in his previously-denied federal habeas petition.  Specifically, petitioner contends that unlike his first federal habeas petition, here he is presenting a claim of actual innocence based on newly discovered evidence. (Doc. No. 23 at 3-24.)  Petitioner further contends that respondent's argument that this petition is untimely is without merit because the pending petition is based on newly discovered evidence and because his second federal habeas corpus petition was dismissed

without prejudice to refiling if the required authorization was received from the Ninth Circuit. (Doc. No. 23 at 73-75.)

III.     Respondent's Reply

In reply, respondent asserts that the basic thrust or gravamen of petitioner's ineffective assistance of counsel claim and, by extension, his accompanying actual innocence claim, is the same as previously presented to this court in his first federal habeas petition which was dismissed as untimely and that the now-pending petition is therefore indeed successive. (Doc. No. 27 at 3-4.)  Respondent reiterates that the petition filed in this action is also untimely filed for the reasons set forth in the motion to dismiss. (Doc. No. 27 at 12.)

## ANALYSIS

The petition for writ of habeas corpus pending before this court is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The AEDPA "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." Tyler v. Cain, 533 U.S. 656, 661 (2001).  The AEDPA provides, in relevant part:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
>
> (A)  the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i)  the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have

found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

[....]

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

[....]

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244.  See also Pizzuto v. Blades, 673 F.3d 1003, 1007 (9th Cir. 2012) ("In other words, Pizzuto must "make a prima facie showing to us that his claim (1) is based on newly discovered evidence and (2) establishes that he is actually innocent of the crimes alleged.") (quoting King v. Trujillo, 638 F.3d 726, 729-30 (9th Cir. 2011))

As set forth in the applicable statute, the fact that petitioner was granted authorization by the Ninth Circuit to file a successive petition does not preclude a finding by this court that the petition is successive and the claims therein are barred.  This is because § 2244 provides for a more searching review of a potentially successive or second petition by the district court after the appellate court has granted authorization.  See Cooper v. Woodford, 358 F.3d 1117, 119 (9th Cir. 2004) (en banc) ("By 'prima facie showing' we understand simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.") (quoting Woratzeck v. Stewart, 118 F.3d 648, 650 (9th Cir. 1997)).  See also Bible v. Schiro, 651 F.3d 1060, 1064, n.1 (9th Cir. 2011).  Indeed, a district court must dismiss any claim that fails to actually satisfy the requirements of § 2244(b)(1) or (2), regardless of any authorization granted by the appellate court.  See 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim

5

presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."); see also Tyler, 533 U.S. at 661 n.3 (the court of appeals may authorize the filing of a second or successive petition upon a prima facie showing, '[b]ut to survive dismissal in the district court, the applicant must actually 'sho[w]' that the claim satisfies the standard."); United States v. Villa-Gonzalez, 208 F.3d 1160, 1164-65 (9th Cir. 2000) (holding that a district court must independently "conduct a thorough review of all allegations and evidence presented by the prisoner" to determine whether the statutory requirements for a second or successive filing are met). Accordingly, now that the court of appeals has authorized him to proceed, petitioner "must make more than another prima facie showing." Villa-Gonzalez, 208 F.3d at 1165. For the reasons set forth below, the court concludes that petitioner has failed to make the required showing.

I.  <u>Petitioner's Ineffective Assistance of Counsel Claim Is Barred Because It is the Same Claim Raised He Raised In His Prior Federal Habeas Petition</u>

The court must determine whether the two grounds for relief presented in the now pending petition satisfy the requirements of § 2244(b)(1) or (2). As noted above, petitioner's current claims are that he was denied the effective assistance of trial counsel and that he is actually innocent of the crimes for which he was convicted. (Doc. No. 1 at 5, 16.)

Respondent contends that petitioner's original federal habeas corpus action filed in this court (<u>Woods v. McGrath</u>, CIV-S-02-1999 DFL DAD P (hereinafter "<u>McGrath</u>")) renders the petition filed in the instant action successive and the claims presented therein permanently barred. (Doc. No. 19 at 5.)[1] The petition filed <u>McGrath</u> was dismissed by this court with prejudice based upon the finding that it was untimely filed. (LD 36.) "[D]ismissal of a section

---

[1] Respondent requests the court to take judicial notice of the record in <u>McGrath</u>. Good cause appearing, that request is granted. <u>E.g.</u>, <u>Bennett v. Medtronic</u>, 285 F.3d 801, 803 n.2 (9th Cir. 2002). ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal quotation marks and brackets omitted)).

6

2254 habeas petition for the failure to comply with the statute of limitations renders subsequent petitions second or successive for purposes of the AEDPA, 28 U.S.C. § 2244(b)." McNabb v. Yates, 576 F.3d 1028, 1030 (9th Cir. 2009). See also In re Rains, 659 F.3d 1274, 1275 (10th Cir. 2009). Thus any claim in the pending federal petition which was also presented in McGrath must be dismissed. See 28 U.S.C. § 2244(b)(1); Tyler, 533 U.S. at 661 ("If a prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases."); Pizzuto, 673 F.3d at 1008.[2]

      Section 2244(b) itself does not define the term "claim." However, the Ninth Circuit has held that a claim for federal habeas relief "is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments . . . [or] proved by different factual allegations." Babbitt v. Woodford, 177 F.3d 744, 756 (9th Cir. 1999) (quoting United States v. Allen, 157 F.3d 661, 664 (9th Cir. 1998)). See also Morales v. Ornoski, 439 F.3d 529, 532 (9th Cir. 2006). Thus, "[a] claim is not newly presented merely because the petitioner offers new factual bases in support of a legal claim that has already been raised." Cooper v. Brown, 510 F.3d 870, 918 (9th Cir. 2007). Stated a different way, "[n]ew factual grounds in support of a legal claim that has already been presented, i.e., ineffective assistance, are not sufficient to evade the mandatory dismissal requirement of 28 U.S.C. § 2244(b)." Cooper, 510 F.3d at 931. See also Babbitt, 177 F.3d at 745.

      Petitioner's current ineffective assistance claim is based on his allegations that his trial counsel "suppressed witness statements and the existence of witness Vincente Solomon." (Doc. No. 1 at 5.) In particular, petitioner alleges that his attorney "failed to conduct a reasonable

---

[2] In addition, any claim which petitioner did not present in the petition he filed in McGrath must still be dismissed unless the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. See 28 U.S.C. § 2244(b)(2). Here, because petitioner does not rely on "a new rule of constitutional law" in seeking federal habeas relief, § 2244(b)(2)(A) does not apply.

7

1  pre-trial investigation," "failed to disclose [to petitioner] the statements from Vincente Solomon
2  (CDC # P-17188) or the existence of Solomon as a witness who could have provided evidence
3  about prosecution eyewitness Herbert James" and failed to call Solomon as a witness at
4  petitioner's trial. (Id. at 9-11.) Solomon's testimony, petitioner alleges, would have
5  demonstrated that the purported eyewitness James did not actually see petitioner at the crime
6  scene because James himself was not at the crime scene. (Id. at 13.)

7         In his original habeas petition filed with this court in McGrath, petitioner asserted
8  numerous grounds for relief, one of which was that he was denied his Sixth Amendment right to
9  the effective assistance of counsel. (McGrath, CIV-S-02-1999 DFL DAD P, Doc. No. 1 at 137-
10 166.) In that earlier filed petition, petitioner's allegations concerning his trial counsel's
11 ineffectiveness spanned thirty pages and included the following specific allegations: that his
12 defense counsel failed to conduct an adequate investigation and interview witnesses; failed to
13 "pursue an issue of mistaken identification;" and failed to adequately prepare for trial. (Id. at
14 139-40, 145-46, 156, 164-65.) Petitioner also alleged in his earlier filed application for federal
15 habeas relief that his trial counsel did not investigate or present evidence that prosecution witness
16 James had mistakenly identified petitioner as the shooter. (Id. at 144-47.)

17        Petitioner's habeas petition now pending before the court includes some new
18 factual allegations that petitioner did not present in his first petition for relief. In particular,
19 petitioner's allegation naming Solomon as a potential source of testimony that could have
20 contradicted the trial testimony of eyewitness James implicating petitioner is new. (Doc. No. 1 at
21 13.) However, "[a]lthough [petitioner] asserts new factual explanations for counsel's
22 ineffectiveness at trial, the gravamen of his legal argument is essentially the same." Babbitt, 177
23 F.3d at 747. See also Cooper, 510 F.3d at 931; Morales, 439 F.3d at 532; Allen, 157 F.3d at 664.
24 Accordingly, having been previously presented in his first petition for relief, petitioner's
25 ineffective assistance claim brought in the pending petition must be dismissed pursuant to §
26 2244(b)(1), unless he can pass through the actual innocence gateway of § 2244(b)(2).

8

The same cannot be said for his new claim, not previously alleged, that he is actually innocent of the crimes for which he was convicted. Accordingly, with respect to that claim the court must consider whether petitioner has satisfied § 2244(B)(2).

II.     Petitioner Has Failed to Produce Clear and Convincing Evidence of His Innocence

Petitioner's new claim of actual innocence is, likewise, based on Solomon's proffered testimony that eyewitness James was not even present at the crime scene and did not see petitioner commit the crimes. (Doc. No. 1 at 16.) In this regard, petitioner argues that James was "the sole prosecution eyewitness" to place petitioner at the crime scene. (Doc. No. 1 at 16.) Petitioner's new evidence in the form of Solomon's proposed testimony disputing that of James' does not, however, prove petitioner's innocence.

It remains an open question whether a freestanding actual innocence claim is even cognizable in a federal habeas proceeding. See District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71 (2009) ("Whether such a federal right [to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); House v. Bell, 547 U.S. 518, 554-55 (2006) ("We conclude here, much as in Herrera, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it."); Herrera v. Collins, 506 U.S. 390, 400 (1993). Even assuming, however, that a freestanding actual innocence claim provides a basis for federal habeas relief and would constitute constitutional error within the meaning of § 2244(b)(2)(B), relief on a second or successive petition could be granted only based upon convincing new evidence which left the federal habeas court persuaded that the petitioner's actual innocence was unquestionably established. Morales v. Ornoski, 439 F.3d 529, 533 (9th Cir. 2006) ("As explained in Schlup v. Delo, 513 U.S. 298, 327 (1995), a substantive "Herrera-type claim" - i.e., a claim based on factual innocence - "would have to fail unless the federal habeas court is itself convinced that th[e] new facts unquestionably establish

9

[Morales's] innocence."); see also House, 547 U.S. at 555 ("Herrera requires more convincing proof of innocence than Schlup.")[3]

Here, the evidence pointed to by petitioner does not come close to meeting this exacting standard. The California Court of Appeal provided the following factual summary of petitioner's crimes of conviction. These facts are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(d)(2), (e)(1); see also Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

> After their friend was shot by rival gang member Mayse Walker, defendants Barry Woods and John Windham, along with several accomplices, set out to find Walker in an apparent effort to retaliate for the shooting.

(LD 2 at 2.)

> Susan Allen and her sister, Trudy Johnson, lived in a four-unit apartment complex on LaSandia Way in Sacramento. Mayse Walker was a friend of Allen's son. Two weeks before Christmas 1989, Walker brought four automobile tires to Allen's apartment and asked if he could store them there. Allen agreed and placed two tires in a hall closet and two in Johnson's room.
>
> On or about December 18, 1989, Walker shot Jerry Barkus in the foot. Eugene Woods and defendant John Windham were with Barkus at the time of the shooting.
>
> Late in the evening on December 26, 1989, Herbert James, a neighbor of Allen and Johnson, noticed five or six men with pistols outside the apartment complex. They were watching another man in a red ski mask who was beating up a neighbor named Magoo. The man in the red mask (subsequently identified as defendant Barry Woods) had a large pistol. After the beating, four or five of the men proceeded to Allen's and Johnson's apartment. The man in the red mask kicked open the front door, and he and the others

---

[3] To the extent that this claim were instead characterized as a procedural "gateway" claim under the "miscarriage of justice" exception addressed in Schlup v. Delo, 513 U.S. 298 (1995), petitioner would have to show by clear and convincing evidence that no reasonable jury would have convicted him. Calderon v. Thompson, 523 U.S. 538, 559-60 (1998); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Morales v. Ornoski, 439 F.3d 529, 533, n. 4 (9th Cir. 2006); Paradis v. Arave, 130 F.3d 385, 396 (9th Cir. 1997). The exception provides a "very narrow" window. Sawyer, 505 U.S. at 341. Obviously, "[t]his standard is not easy to meet." Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002). See also King v. Trujillo, 638 F.3d 726, 730 (9th Cir. 2011).

went inside. Defendant Windham remained outside, standing by some mailboxes approximately 500 feet from the apartment.

Allen and Johnson were in their respective bedrooms when they hears a loud noise at their door. They ran to the front door and saw four or five men with guns and ski masks rushing inside. Johnson panicked and fled to her bedroom closet. A man in dark clothing and a ski mask followed Johnson and "kept hollering, bitch come out of the closet." Johnson said she would do so if he promised not to hurt her. As she spoke, she hear a loud noise "like a bomb had exploded," felt a severe pain in her foot, and "saw blood coming out."

When Johnson emerged from the closet, the masked man made her get on her knees. He repeatedly asked her about Walker. She told him she did not know where Walker was. The masked man returned to the living room, and Johnson heard three gunshots. She assumed Allen had been killed. The man then returned to Johnson's room along with another masked man who struck Johnson on the head. Before leaving the apartment, the men warned Johnson, "if we find out that you're lying, we will come back and we'll kill you." On their way out, the men took two of Walker's tires from Johnson's bedroom.

While Johnson was being assaulted, another man with a gun pushed Allen into her bedroom, forced her to lie on the floor, put a gun to her head, and demanded to know Walker's whereabouts. Allen stated, "Mayse doesn't live here." The man responded, "we know that. We know he comes here sometimes." Allen replied that Walker would not be at her house after midnight. The man straddled Allen and put his gun to her head. From the doorway, another man repeatedly urged, "com on, man, someone said the police is coming." Allen then heard gunshots from another part of the house. A man ran in from outside saying, "the police is coming." The man above Allen told her, "we're leaving now. We're coming back and if Mayse is here, we're gonna take care of all three of you." After the assailants left, Allen telephoned 911.

Herbert James, the neighbor who had observed the culprits enter Allen's and Johnson's apartment, heard the shooting and hollering, and saw the men run from the apartment. The man in the red mask stopped to pull up his mask. James saw it was his acquaintance, defendant Woods. While Woods was beneath a street light, James saw a flash from Woods' gold tooth. Because James knew Allen personally, he wanted to see where the men were going. He followed them behind a building at 86 Caselli Circle, where the men removed their masks. James recognized Windham, Woods, Barkus and Eugene Woods.

At the time of the Allen/Johnson attack, James McMahon and Craig Chmelik were visiting McMahon's brother, Michael

11

McMahon, in his second-floor apartment at 92 Caselli Circle. En route to a convenience store, the trio exited the apartment. At that point, four or five men appeared on the scene carrying gold-rimmed tires and wheels. The men yelled at James McMahon, who raised his hands to indicate his lack of involvement in what was happening. Michael McMahon told his brother to leave; he assumed James would leave with Chmelik who was already in his car.

After hearing Michael's warning, James McMahon got into Chmelik's Mustang. At that point, four or five men emerged from around the side of the building. As Chmelik put the Mustang in motion, James McMahon saw one of the men "whip" out a "great big handgun." He brought the gun into the light, loaded it, trained it on the Mustang, and fired six times. The dash and windshield exploded. The Mustang rolled backward and collided with another car. James McMahon received two bullet wounds in his left thigh, and Chmelik was shot twice in the chest. McMahon testified: "the first two shots were right at [Chmelik] – I mean, he didn't have a chance, through his chest, and the last thing he said was, I'm hit." Defendant Woods opened the driver's door and looked inside. McMahone quickly exited the passenger door and ran to some bushes. He remained concealed until the police arrived.

Herbert James saw Woods shoot into the Mustang using a "big pistol." The other men "turned around in amazement" in response to the shooting. Woods then looked into the driver's and passengers' sides of the Mustang.

After the shooting, Michael McMahon saw the men change their clothing from red to blue. In photographic lineups prior to trial, Michael identified Woods and Windham as two of the men involved in the incident.

Eugenia Adams, an 11-year member of the Crips street gang, lived just south of Caselli Circle on Burgoyne Lane. She had known defendant Windham for five to ten years. Woods and Windham arrived at Adams' apartment between 1:15 and 2:00 a.m. on the morning of December 27, 1989. Woods was carrying a .44 Magnum revolver in a red jacket or other article of clothing. He handed the gun to Adams' it felt warm to the touch. She asked Woods what she was supposed to do with the gun. He replied, "put it somewhere." Woods then placed the gun under Adams' refrigerator and said he would be back in the morning to get it. Woods and Windham entered Adams' bathroom. Adams heard what sounded like bullet shells being dropped into the toilet. After Woods and Windham left, Adams removed the gun from under the refrigerator. Near the gun, she discovered a glove containing some shells.

/////

12

> Police officers seized the gun from Adams' apartment later that day. A criminologist who analyzed the evidence testified the bullet fragments recovered from Chemelik's body, his jacket, and the Mustang's trunk were fired from the gun seized from Adams' apartment. Susan Allen testified the gun resembled the one that had been held to hear head.

(LD 2 at 5-9.)

The trial record as lodged with this court reveals the following additional evidence introduced at petitioner's trial. Witness Steven Miller observed petitioner driving a light colored Chevy in the neighborhood of Caselli Circle near the time of the shootings. (LD 44 [Reporter's Transcript Vol. 5 ("5RT")] at 1214-15, 1217.) After the shootings, Herbert James observed petitioner looking through Chmelik's Mustang as if he were searching for something. (LD 44 [4RT at 817, 933-34, 1001.]). A set of keys was found lying on Chmelik's leg; the keys belonged to a gold Chevrolet that was registered to petitioner. (LD 44 [2RT] at 362, 402.)

On this record, petitioner's "new evidence" in the form of Solomon's proposed testimony that he was with James when the shooting occurred and that James therefore did not see who fired the shots would have, at best, created a credibility dispute between the trial testimony of Solomon and James. Moreover, contrary to petitioner's argument in support of his claim for habeas relief (see Doc. No. 1 at 16), James was not the only eyewitness linking him to the crimes of conviction. Rather, as recounted by the state appellate court, witness McMahon identified petitioner as being involved in Chmelik's shooting and witness Adams testified that petitioner was in possession of the warm .44 Magnum revolver and empty shells that were later linked by a police criminologist to the shootings.[4]

The "new evidence" relied upon by petitioner clearly does not significantly undermine the jury's verdict. Nor does it approach showing that petitioner is unquestionably innocent of the crimes of which he was convicted as it must in order to even arguably entitle him

---

[4] The court also notes that Solomon's declaration was not obtained by petitioner until 2009, nearly twenty years after the commission of the crimes. (See Doc. No. 1 at 16.)

to federal habeas relief under the demanding standard addressed above. See Schlup, 513 U.S. at 327, 329; Morales, 439 F.3d at 533; see also House, 547 U.S. at 555; Clark v. Lewis, 1 F.3d 814, 824 (9th Cir. 1993) ("The Supreme Court has noted that such latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of the witness' account of petitioner's actions.") (internal quotations and brackets omitted)). In sum, while Solomon's proposed testimony might have strengthened petitioner's defense that he was misidentified as the shooter, it is wholly insufficient to demonstrate that a constitutional violation has probably resulted in the conviction of one who is actually innocent.

The record before this court conclusively demonstrates that the pending petition fails to meet the requirements for the filing of a successive petition under 28 U.S.C. § 2244(b)(2). Accordingly, petitioner's request for an evidentiary hearing will be denied as unwarranted. In light of the finding that the habeas petition in this action should be dismissed as successive, the court need not reach respondent's alternative argument that it should be dismissed as untimely.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that petitioner's motion requesting an evidentiary hearing (Doc. No. 26) is DENIED.

Further, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (Doc. No. 19) be GRANTED and the petition for writ of habeas corpus (Doc. No. 1) be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file

objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections petitioner elects to file, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: February 13, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:11
wood3250.157